FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2014 SEP 26 P 3: 49

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| BOB BAKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:14-cv-1272 |
| ) | (JCC/TRJ) |
| THE WRIGHT EXPERIENCE, INC., ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff, Bob Baker ("Baker"), for his Complaint against Defendant, The Wright Experience, Inc., ("Defendant"), alleges and states as follows:

### I. The Parties, Jurisdiction and Venue

1. Plaintiff, Bob Baker, is a citizen of the State of Oklahoma.

2. Defendant, The Wright Experience, Inc., is a Virginia corporation with its principal place of business in Warrenton, Virginia.

3. The amount in controversy is greater than $75,000.00. and this Court has subject matter jurisdiction under 28 U.S.C. §1332.

4. Venue is proper in the United States District Court for the Eastern District of Virginia under 28 U.S.C. §1391, as the Defendant has its principal place of business in the Eastern District of Virginia, and a substantial part of the events giving rise to the claim occurred in this judicial district.

5. This Court has jurisdiction to adjudicate Count One of this Complaint, which seeks relief in the form of a declaratory judgment, under 28 U.S.C. § 2201.

## II. General Allegations

6. On or about February 1, 2012, Plaintiff Baker purchased a Curtiss JN4-D (with OX5 engine) (the "Aircraft") from Pamela Cooley.

7. At the time of his purchase, Baker knew that the engine needed a complete overhaul in order to make the plane airworthy.

8. Defendant advertises in national publications, including *Trade-A-Plane*, that it has over forty (40) years' experience in the restoration of such aircraft and engines. These advertisements invited interested customers with such planes to e-mail Ken W. Hyde, or call a telephone number stated therein.

9. During the month of October, 2012, Plaintiff Baker contacted Ken W. Hyde at The Wright Experience, Inc. and inquired about the costs associated with a restoration of the engine for his Aircraft.

10. Defendant refused to provide a fixed price for the project, but instead quoted Plaintiff an hourly labor rate of $55.00 per hour, together with costs and expenses of repair.

11. In the month of November, 2012, Plaintiff delivered, or caused to be delivered to Defendant, the engine and fuselage for the Aircraft. He also delivered a second OX5 engine which could be used for parts in connection with the restoration (the "Spare Engine").

12. From December 5, 2012, through June 6, 2014, Plaintiff was billed and paid to Defendant the sum of $220,263.77 for repairs to the Aircraft. By June, however, the project had taken much longer than anticipated, and was not yet completed. Moreover, the costs billed to and paid by Plaintiff greatly exceeded those anticipated by him.

13. On or about June 1, 2014, upon receipt of the last invoice paid by Plaintiff, Plaintiff advised Defendant to stop all work on the project and return the Aircraft and Spare Engine to Plaintiff.

14. During the course of the project, Plaintiff had been informed by the Defendant that the "longerons" on the Aircraft were not airworthy and needed substantial repair. Additionally, during the course of the project, Plaintiff was advised that a substantial portion of the fuselage and wooden portions of the Aircraft had been varnished with an improper varnish and would need to be stripped and re-varnished.

15. Plaintiff relied on Defendant's representations as to the condition of, and the status of repairs to, the Aircraft in paying the invoices submitted to him by the Defendant.

16. Notwithstanding Plaintiff's express instructions to stop all work on the Aircraft, subsequent to the receipt by Plaintiff of the invoice for the work period ended June 6, 2014, after July 1, 2014, Plaintiff received additional invoices from Defendant reflecting that his instructions to stop work had been ignored by Defendant. Indeed, after receiving the last invoices, Plaintiff spoke with Hyde, who confirmed that Defendant had ignored the stop work directive.

17. The additional invoices received by Plaintiff now total $78,759.75. Those invoices were for work allegedly performed on the Aircraft after June 1, 2014. Plaintiff has refused to pay such invoices.

18. On or about June 24, 2014, Plaintiff retook possession of the fuselage section of the Aircraft. At the same time, he delivered spare parts he had sold to defendant for $7,000.00. Defendant has refused to pay for those parts.

19. Defendant remains in possession of the OX5 engine to the Aircraft and the Spare Engine and has refused to release the same to Plaintiff until Plaintiff pays all amounts claimed to be due to Defendant by Plaintiff.

20. Plaintiff contends that he owes no further amounts allegedly due to Defendant and further contends he has been overcharged by Defendant in that the Defendant:

    a) charged an unreasonable number of man hours for the actual work performed;

    b) performed unauthorized work on the Aircraft;

    c) represented that certain parts of the Aircraft needed to be repaired and/or replaced when, in fact, such parts did not need to be repaired or replaced;

    d) represented to Plaintiff that photographs of Plaintiff's Aircraft were, in fact, Plaintiff's Aircraft, when, upon information and belief, such photographs, including structural parts of the Aircraft, were not from Plaintiff's Aircraft but from another similar aircraft which needed the repairs charged for; and

    e) charging for work not performed.

21. Plaintiff contends that the amount of overcharge by Defendant is in excess of over $100,000.00, exclusive of the unpaid invoices.

## III. Specific Causes of Action

### Count One: Declaratory Relief

22. Plaintiff incorporates by reference the allegations set forth in paragraphs 1-21 as though the same were fully set forth herein.

23. There is a justiciable controversy between Plaintiff and Defendant concerning whether Plaintiff owes additional amounts to Defendant pursuant to the unpaid invoices and the oral contact for the Aircraft project. All of such invoices were submitted to Plaintiff for work performed after the date Plaintiff specifically instructed the Defendant to no longer work on the Aircraft.

24. Defendant holds Plaintiff's Aircraft engine and Spare Engine and refuses to release the same to Plaintiff.

25. Defendant's holding of the Aircraft engine and Spare Engine is wrongful.

26. Plaintiff requests that this Court enter a declaratory judgment, determining that Plaintiff is not obligated to pay any of the invoices submitted after June 1, 2014, for work allegedly performed by Defendant after such date and for a further declaratory order and judgment directing the Defendant to return to Plaintiff, or make available to Plaintiff, Plaintiff's Aircraft engine and the Spare Engine.

## Count Two: Breach of Contract

27. Plaintiff incorporates by reference the allegations set forth in paragraphs 1-26 as though the same were fully set forth herein.

28. Defendant has breached its contract with Plaintiff by failing to repair and restore the Aircraft in a timely workmanlike manner.

29. Defendant has further breached its contract with Plaintiff by misrepresenting the number of man hours spent repairing the Aircraft and/or misrepresenting to Plaintiff the work needed to be performed to make the Aircraft airworthy.

30. Plaintiff has paid Defendant the sum of $220,263.70, in reliance upon the accuracy and truthfulness of Defendant's statements and invoices, and Defendant's statements that all of such work with respect to which such invoices were submitted was necessary and completed and that such charges were in accordance with the oral contract.

31. The charges made by Defendant to Plaintiff were unreasonable, over-inflated and did not represent the actual value of services rendered, the actual services rendered, and the expenses advanced by Defendant. As a result Plaintiff has been damaged.

32. Plaintiff's damages by reason of such overcharges paid by Plaintiff exceed $100,000.00.

33. Additionally, per a separate contract between the parties, Defendant has failed to pay $7,000.00 to the Plaintiff for spare aircraft parts.

## Count Three: Violations of the Virginia Consumer Protection Act

34. Plaintiff incorporates by reference the allegations set forth in paragraphs 1-33 as though the same were fully set forth herein.

35. Defendant is a "supplier" as defined by Va. Code § 59.1-198 because it engages in consumer transactions and because it is a distributor that sells services and goods in consumer transactions.

36. The transaction between Defendant and Plaintiff is a "consumer transaction" within the scope of Va. Code § 59.1-198 because it was a sale of services to restore an aircraft and engine to be used primarily for the Plaintiff's personal, family, or household purposes.

37. Defendant violated the Virginia Consumer Protection Act, Va. Code § 59.1-196 et seq., by engaging in the following unlawful and fraudulent acts or practices as a supplier in a consumer transaction as defined by Va. Code § 59.1-200:

   a. Misrepresenting that certain parts of the Aircraft needed to be repaired and/or replaced when, in fact, such parts did not need to be repaired or replaced in violation of Va. Code § 59.1-200(A)(5) and Va. Code § 59.1-200(A)(6);

   b. Misrepresenting that services had been performed by charging for work not actually performed in violation of Va. Code § 59.1-200(A)(10);

   c. Misrepresenting the quality and nature of work performed for the Plaintiff, and deceiving the Plaintiff, by virtue of charging an

unreasonable number of man hours for the actual work performed in violation of Va. Code § 59.1-200(A)(5), Va. Code § 59.1-200(A)(6), and Va. Code § 59.1-200(A)(14);

d. Misrepresenting to and deceiving the Plaintiff by representing to him that photographs of Plaintiff's Aircraft were, in fact, Plaintiff's Aircraft, when, upon information and belief, such photographs, including structural parts of the Aircraft, were not from Plaintiff's Aircraft but from another similar aircraft which needed the repairs charged for in violation of Va. Code § 59.1-200(A)(5), Va. Code § 59.1-200(A)(6), and Va. Code § 59.1-200(A)(14);

e. Using deception and misrepresentation to bill Plaintiff for Defendant's performance of unauthorized work on the Aircraft in violation of Va. Code § 59.1-200(A)(14); and

f. Otherwise violating the provisions of Va. Code § 59.1-200.

38. Plaintiff suffered a loss as a result of the Defendant's violations of the Virginia Consumer Protection Act because charges made by Defendant to Plaintiff were unreasonable, over-inflated and did not represent the actual value of services rendered, the actual services rendered, and the expenses advanced by Defendant.

39. As a direct and proximate result of Defendant's violations of the Virginia Consumer Protection Act as set forth above, Plaintiff has suffered damages because of these overcharges in excess of $100,000.00.

40. Pursuant to Va. Code § 59.1-204(A), the Plaintiff is a person that has suffered a loss as a result of violations of the Virginia Consumer Protection Act, and thus he is entitled to initiate this action to recover actual damages.

41. Pursuant to Va. Code § 59.1-204(A), Defendant's violations of the Virginia Consumer Protection Act were willful violations in that they were done to intentionally deceive Plaintiff in order for the Defendant to obtain undue and unlawful economic gain, and thus Plaintiff demands up to three times the actual damages he sustained.

42. Pursuant to Va. Code § 59.1-204(B), Plaintiff is also entitled to the award of reasonable attorneys' fees and court costs.

## IV. Claim for Relief

WHEREFORE, Plaintiff, Bob Baker prays that this Court enter its declaratory judgment against Defendant, The Wright Experience, Inc., determining:

(1) that Plaintiff owes nothing to Defendant with respect to all invoices submitted by Defendant to Plaintiff after June 1, 2014;

(2) that Defendant be ordered to return, or make available to Plaintiff, the Aircraft engine and the Spare Engine.

In addition, Plaintiff requests that this Court enter judgment in favor of the Plaintiff as follows:

(1) a money judgment against Defendant in such sum as Plaintiff proves at the trial of this matter, but not less than $100,000.00;

(2) a money judgment against Defendant for breach of contract for $7,000.00;

(3) a money judgment against Defendant in the amount of three times actual damages as provided by Va. Code § 59.1-204(A);

(4) that Plaintiff have and recover its reasonable attorneys' fees and costs incurred herein pursuant to Va. Code § 59.1-204(B); and

(5) that Plaintiff have and recover such other and further relief to which he may be entitled.

Dated: September 26, 2014

Respectfully Submitted,

BOB BAKER

By Counsel:

*/s/ W. Michael Holm*

W. Michael Holm (VSB #21035)
Andrew J. Narod (VSB #79691)
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, VA 22314
Phone: 703.684.8007
Fax: 703.684.8075
Michael.Holm@leclairryan.com
Andrew.Narod@leclairryan.com
*Counsel for Plaintiff, Bob Baker*